**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LISA MORALES FIRESTONE and
SCOTT CRAIG FIRESTONE,

                Plaintiffs,

-against-

VICTOR BERRIOS, DR. JEAN KENDALL,
BOARD OF EDUCATION OF THE
MANHASSET UNION FREE SCHOOL
DISTRICT, and THE MANHASSET UNION
FREE SCHOOL DISTRICT,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-cv-0356 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Minerva & D'Agostino, P.C.**
*Attorneys for the Plaintiffs*
107 South Central Avenue
Valley Stream, NY 11580
      By: Ross Merrit Gerber, Esq., Of Counsel

**Callan, Koster, Brady & Brennan, LLP**
*Attorneys for the Defendant Dr. Jean Kendall*
One Whitehall Street
10th Floor
New York, NY 10004
      By:  Paul F. Callan, Esq.,
          Stephen James Barrett, Esq., Of Counsel

**Sokoloff Stern**
*Attorneys for the Defendants Board of Education of the Manhasset Union Free School District*
*and the Manhasset Union Free School District*
179 Westbury Avenue
Carle Place, NY 11514
      By:  Steven C. Stern, Esq.
          Mark A. Radi, Esq., Of Counsel

**Victor Berrios**
*Defendant pro se*
38 Sundial Lane
Bellport, NY 11713

**SPATT, District Judge**.

The present action was initiated by the Plaintiffs Lisa Morales Firestone (the "Plaintiff"

or "Firestone") and her husband Scott Craig Firestone in state court, which was subsequently

removed to this Court by the Defendants—the Board of Education of the Manhasset Union Free

School District (the "Board") and the Manhasset Union Free School District (collectively the

"municipal Defendants"), Dr. Jean Kendall ("Dr. Kendall"), and Victor Berrios ("Berrios").

Presently before the Court are four separate motions: (1) a motion to dismiss the Plaintiff's

claims, filed by the municipal Defendants; (2) a motion for judgment on the pleadings, filed by

Dr. Kendall; (3) a cross-motion to compel the Court to reinstate a Title IX claim, filed by the

Plaintiff; and (4) a motion to dismiss Dr. Kendall's cross-claims, filed by the municipal

Defendants.  For the reasons set forth below, the motion to dismiss the Plaintiff's claims is

denied; the motion for judgment on the pleadings is granted in part and denied in part; the cross-

motion to compel is denied; and the motion to dismiss the cross-claims is granted.

## I.  BACKGROUND

### A.  Factual Background

The Plaintiff Lisa Morales Firestone is a kindergarten teacher at the Munsey Park

Elementary School (the "School") in the Manhasset Union Free School District (the "District").

(Am. Compl., ¶ 9.)  She has been employed there since 2000.  The Defendant Victor Berrios was

a custodian at the Munsey Park Elementary School.  However, he was not working at the time of

the incidents set forth in the complaint because he was on Workers' Compensation leave.  (Am.

Compl., ¶¶ 3-4.)  The Defendant Dr. Kendall is the principal of the School.  According to the

Amended Complaint, Dr. Kendall is intimately involved with the selection and retention of staff

2

and also supervises and controls employee work schedules and conditions of employment.  (Am. Compl., ¶¶ 13, 102.)

According to the Plaintiff, Berrios sent her two "suggestive/provocative emails".  (Am. Compl. ¶¶ 17- 21.)  The first email, dated February 17, 2010, contained the following statements: "mi amore;" "Hey, I miss you girl," and "Love you girl."  (Am. Compl., ¶ 19.)  While the Amended Complaint does not specifically allege that Firestone reported this email to anyone, it asserts that it was sent over the District's email system which "could be accessed by an Administrator."  (Am. Compl., ¶ 20.)

The second email was received on March 2, 2010.  The Plaintiff alleges that this latter email stated: "I guess you don't love me anymore because I only have one arm, but let me tell you that I don't need two hands to make you, happy OK.  I could have you jumping with just one. Well I'm doing ok this Thursday I start my Therapy and hopefully I'll be in your arms and you be eating my special P.R. meals that you like so much.  Feel free to right (sic) to me whenever.  My regards to all my Kindergarten Teachers.  Hope to see you soon.  Love Victor." (Am. Compl., ¶ 21.)  She found this email inappropriate and began to fear for her personal safety.  (Am. Compl., ¶ 20–22.)

The Plaintiff reported this email on the following day, March 3, 2010.  (Am. Compl., ¶ 23.)  In particular, she forwarded the email to her Principal, the Defendant Dr. Kendall.  As a result of this complaint, on March 3, 2010, the Plaintiff had two meetings with Dr. Kendall regarding the communications from Berrios.  She allegedly told Dr. Kendall at that time that something "had to be done", although she did not want her name to be used in connection with any action against Berrios.  (Am. Compl., ¶¶ 24, 25.)  The Plaintiff specifically alleges that she told Dr. Kendall that she was frightened and concerned that Berrios would appear at the school.

The Plaintiff further contends that despite showing the March 2nd email to Dr. Kendall, "neither the defendant, Dr. Jean Kendall, nor any other administration officials of the defendant, School District, nor the Board of Education took any appropriate action to put in a plan to protect the plaintiff, Lisa Morales Firestone, or to assuage any of her concerns regarding the sexually suggestive/provocative emails from the defendant, Victor Berrios." (Am. Compl., ¶ 26.)

On March 4, 2010, the Defendant Berrios, who "despite being on Worker's Compensation Leave," and who "had no justification to being present at the school", entered the Plaintiff's classroom and allegedly sexually assaulted her. (Am. Compl., ¶ 30.) Firestone claims that the District, the Board, and Dr. Kendall "failed to take appropriate measures to protect the plaintiff …." (Am. Compl., ¶ 33.)

## B.  Procedural History

The Plaintiff initially filed this action in the Supreme Court, Nassau County, on June 1, 2011, asserting causes of action against the Defendants under New York State law based on negligence/failure to protect; assault and battery; acquiescence and improper investigation into the battery; sexual harassment pursuant to N.Y. Exec. Law § 296 (the "Human Rights Law"); and that the District failed to follow its own sexual harassment policy. The Plaintiff's husband, Scott Craig Firestone, also asserted a derivative cause of action based on the alleged loss of service of his wife.

On June 19, 2011, the municipal Defendants moved to dismiss the state court action on the grounds that: the case was filed after the one-year statute of limitations expired for the Plaintiff's intentional tort and Human Rights Law claims; the Court lacked subject matter jurisdiction, as the notice of claim only asserted a claim based upon failure to provide a safe workplace and none of the other causes of action; the municipal Defendants had no duty to

protect the Plaintiff; the municipal Defendants are entitled to discretionary immunity under state law; the action was precluded by the Workers' Compensation bar; the purported violation of the District's sexual harassment policy was not a legally cognizable claim; Scott Firestone's derivative claims failed for the same reasons as his wife's claims; and punitive damages are not available against a school district or board of education.

In response to this motion to dismiss, the Plaintiffs withdrew all of the prior claims, and cross-moved to amend the complaint to assert new, federal causes of action against the Defendants. Specifically, the Plaintiffs requested leave to amend the complaint to include two Fourteenth Amendment claims, pursuant to 42 U.S.C. § 1983, both asserting a violation of the Equal Protection Clause; a Title IX claim based on alleged sexual harassment; and a derivative claim on behalf of Scott Firestone. The proposed amended complaint also included a cause of action against co-defendants Dr. Kendall and Berrios for violations of the Human Rights Law.

On January 12, 2012, Nassau County Supreme Court Justice Anthony L. Parga acknowledged the voluntary dismissal of the Plaintiffs' claims that were set forth in the original complaint. He also granted their motion to amend the complaint to include the Section 1983 claims against the municipal Defendants and Human Rights Law claims against co-defendants Dr. Kendall and Berrios. However, Justice Parga denied the motion to amend the complaint to include a Title IX claim and dismissed Scott Firestone's derivative claims. Consequently, the only claims that remain are Plaintiff Lisa Morales Firestone's Fourteenth Amendment Equal Protection claims against the Defendants and her Human Rights Law claims against Dr. Kendall and Berrios. In this vein, the Defendants submit that the caption should be amended to remove Scott Craig Firestone's name, as he is no longer a plaintiff in this case.

5

## II.  DISCUSSION

### A.  Legal Standard

In general, "the standard for addressing a Rule 12(c) motion for judgment on the

pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."

Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Under the now well-established Twombly standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570

(2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule

12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft

v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Id. at

72 (quoting Iqbal, 129 S. Ct. at 1949).  "'Second, only a complaint that states a plausible claim

for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen

there are well-pleaded factual allegations, a court should assume their veracity and . . . determine

whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set

forth in the complaint and draws all reasonable inferences in the Plaintiff's favor.  Zinermon v.

Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists

Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  Only if this Court is satisfied that "the complaint

cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal

pursuant to Rule 12(b)(6)".  Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).  The

issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims."  Todd v. Exxon Corp., 275 F.3d 191,

198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d

90 (1974)).

## B.  As to the Plaintiff Scott Craig Firestone

As an initial matter, the caption for this case still includes the Plaintiff's husband, Scott

Craig Firestone, as a plaintiff.  However, Justice Anthony L. Parga previously ruled that Scott

Craig Firestone cannot maintain a cause of action for loss of consortium, which was his sole

derivative claim.  As Justice Parga found, "[i]t is well settled that one may not assert derivative

claims for loss of consortium based upon alleged violations of a family member's civil rights

under 42 U.S.C. § 1983 . . . or N.Y. Executive Law §296."  (Pl. Ex. B at 9.)  Accordingly, as

there are no viable claims remaining that were asserted by Scott Craig Firestone, his name is

hereby removed from the caption of this case.

## C.  As to the State Court Decision and the "Law of the Case" Doctrine

The next crucial matter that must be determined at the outset is the legal effect that

Justice Parga's order has on the pending motions to dismiss and the Plaintiff's cross-motion to

reinstate one of her previously asserted claims.

As recounted in the Procedural Background section, two groups of defendants—the

municipal Defendants and Dr. Kendall—both filed motions to dismiss when the case was

previously in New York State Supreme Court.  In response to these motions, the Plaintiffs

conceded that many of their state law claims should be dismissed and thus cross-moved to amend their complaint to eliminate many of their initial causes of action.  As part of this motion to amend, the Plaintiffs also sought to assert three new causes of action:  two against all of the Defendants for violations of 42 U.S.C. § 1983, and a third against all of the Defendants for violations of Title IX (20 U.S.C. §1681, *et. seq*).  In addition, the proposed amended complaint sought to withdraw the cause of action alleging violations of N.Y. Exec. Law § 296 as against the District and the Board, only, and to replead this cause of action as against the individual defendants Dr. Kendall and Berrios.  In sum, the Plaintiffs sought leave to serve an amended complaint which asserted the following causes of action: (1 & 2) violations of 42 U.S.C. § 1983 against Defendants Kendall, the District, and the Board; (3) gender based discrimination in education pursuant to Title IX against Defendants Kendall, the District, and the Board; (4) violations of N.Y. Exec. Law § 296 against the individual defendants Dr. Kendall and Berrios; and (5) loss of services on behalf of Scott Craig Firestone.  The Defendants opposed the Plaintiff's cross-motion to amend the complaint, arguing that the Plaintiffs' proposed amended complaint failed to state any cognizable, or legally viable causes of action and that there was no merit to the proposed amended complaint.

   In his decision with regard to the motion to amend, Justice Parga first clarified that a motion to amend the pleadings was not needed because amendment was permitted as of right under the relevant statute.  Specifically, N.Y. CPLR § 3025(a) governs the amendment of pleadings in New York State court, and states that "[a] party may amend his pleading once without leave of court within twenty days after its service, or at any time before the period for responding to it expires, or within  twenty days after service of a pleading responding to it."

8

Nevertheless, Justice Parga proceeded to engage in a thorough analysis, putting aside the fact that leave of the Court was not required.

The state court decision then set out the relevant legal standard.  Justice Parga stated that leave to amend should be freely given where there is no prejudice or surprise to the moving party, but also where there is no showing that the proposed amended is "palpably insufficient as a matter of law" or "totally devoid of merit."  (Pl. Ex. B at 4.)  Thus, he proceeded to set forth the standard on a motion to dismiss for failure to state a cause of action.  In this Court's view, Judge Parga undeniably considered the futility and merits of the Plaintiffs' proposed causes of action under a motion to dismiss standard.

Justice Parga then analyzed the merits of the Plaintiffs' asserted causes of action in the amended complaint, namely the Section 1983 claims, the N.Y. Exec. Law § 296 claim, the Title IX claim, and Scott Craig Firestone's claim for loss of services.  In connection with the Section 1983 claims, Justice Parga found that the Plaintiffs adequately pled a municipal policy or custom sufficient for purposes of Monell liability; that Dr. Kendall could be held individually liable as a result of her final authority as a school official; that the Plaintiff sufficiently pled Dr. Kendall's personal involvement in the alleged constitutional deprivations; and that it was premature to dismiss the claim against Dr. Kendall on the basis of qualified immunity, as the burden of proof would ultimately rest with Dr. Kendall.  With respect to the Plaintiffs' proposed claim pursuant to Title IX, the state court recognized that the weight of authority indicates that an employee of an educational institution has no private employment discrimination for money damages under Title IX, and accordingly dismissed this cause of action.  As for the N.Y. Exec. Law § 296 claim against Dr. Kendall, Justice Parga found that contrary to Dr. Kendall's assertions, the claim was not time-barred.  In addition, Justice Parga ruled that Dr. Kendall could not escape liability

because she potentially qualified as an "employer" under the state statute, although Dr. Kendall argued otherwise.  Therefore, the state court ruled that the Plaintiff sufficiently stated a cause of action against Dr. Kendall for violations of N.Y. Exec. Law § 296.  Finally, it was found that Scott Craig Firestone could not maintain his cause of action for loss of consortium and this claim was dismissed.

After the motion to amend was granted and the case was removed to this Court, the Defendants filed a motion to dismiss the Amended Complaint and a motion for judgment on the pleadings.  These pending motions raise many of the same contentions that were initially raised in the parties' oppositions to the Plaintiffs' proposed amended complaint and assessed by Justice Parga.  Therefore, in her opposition to the two pending motions to dismiss, Firestone argues that Justice Parga's decision upholding the Plaintiff's Section 1983 and N.Y. Exec. Law § 296 claims is the "law of the case" and should not be reanalyzed by this Court.

"According to the doctrine of "law of the case," a decision regarding an issue of law made at one stage of a litigation becomes binding precedent, to be followed in subsequent stages of the same litigation." Scottish Air Intern., Inc. v. British Caledonian Group, PLC., 152 F.R.D. 18, 24 (S.D.N.Y. 1993) (citing DiLaura v. Power Auth. of N.Y., 982 F.2d 73, 76 (2d Cir. 1992); Sanders v. Sullivan, 900 F.2d 601, 605 (2d Cir. 1990)).  "The doctrine has its roots in the jurisprudential desire to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit." Id.; see also United States v. Uccio, 940 F.2d at 758 ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case . . . absent 'cogent' or 'compelling' reasons.") (quoting Doe v. New York City Dep't of Social Servs., 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S. Ct. 195, 78 L. Ed. 2d 171 (1983)).  However, the doctrine does not prevent a court

10

from reconsidering prior opinions when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DiLaura, 982 F.2d at 76 (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.), cert. denied, 506 U.S. 820, 113 S. Ct. 67, 121 L. Ed. 2d 34 (1992)).  "Law of the case directs a court's discretion, it does not limit the tribunal's power . . . ." Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983) (citations omitted).

It is settled that the law of the case doctrine applies when a state court case is removed to federal court. Torah Soft Ltd. v. Dronsin, 224 F. Supp. 2d 704, 710 (S.D.N.Y. 2002) ("The law of the case doctrine generally applies to decisions made by a state court prior to removal to federal district court."); see 18 Moore's Federal Practice § 134.22[3][c][i] (3d ed. 1999) ("When an action is removed from a state court to a federal court, the law of the case doctrine applies to the decisions entered by the state court prior to removal.").  This is because "[t]he orders entered by the state court are treated as though they had been entered by the federal court." Nasso v. Seagal, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003); see, e.g., In re Diet Drugs, 282 F.3d 220, 231–32 (3d Cir. 2002) ("After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed."); Resolution Trust Corp. v. Northpark Joint Venture, 958 F.2d 1313, 1316 (5th Cir. 1992) ("A prior state court order in essence is federalized when the action is removed to federal court.").

Here, the Court finds that Justice Parga's determinations as to whether the Plaintiff has stated a Section 1983 and N.Y. Exec. Law § 296 cause of action are the law of the case.  He engaged in a thorough analysis and discussed many of the precise legal issues that the Court presently faces.  It would not serve the jurisprudential desire to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit if this Court were to

11

revisit identical legal issues that were previously raised by the Defendants in the State Court. See City of Charleston, S.C. v. Hotels.com, LP, 520 F. Supp. 2d 757, 775 (D. S.C. 2007) ("The court emphasizes that it does not invoke the law of the case doctrine as a hollow technicality. Rather, the court decided these same issues mere months ago under an identical standard of review.  Since that time, Defendants have not raised, and the court is not aware of, any new material facts which would change the analysis of whether Plaintiffs' allegations meet the liberal pleading requirements of Rule 12(b)(6).").

The Defendants have pointed out that Justice Parga analyzed the Plaintiffs' causes of action in the context of a motion to amend, so that the law of the case doctrine would not bar a subsequent motion to dismiss those same causes of action.  While it is true that certain courts, including this one, have previously followed this proposition, this does not dictate against embracing the doctrine here.  First, the doctrine is undoubtedly discretionary, so there is no absolute rule that would mandate or forbid its application.

Second, where this Court previously held that the determination on a motion to amend with regard to futility was "a far cry from a finding of legal sufficiency", the Court specifically did so in light of the fact that the district judge that granted the plaintiff leave to amend did so without passing on the merits of the case.  Mathie v. Fries, 995 F. Supp. 1284, 1301 (E.D.N.Y. 1996).  Here, Justice Parga engaged in a lengthy and in-depth analysis that was not a far cry from a finding of legal sufficiency.  Moreover, many courts have recognized that while the procedural vehicles of a motion to amend and a motion to dismiss are distinct, they nevertheless operate under the same standard.  See Crippen v. Town of Hempstead, No. 07 Civ. 3478, 2009 WL 803117, at *1 n.1 (E.D.N.Y. March 25, 2009) ("The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss—

namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted."); see also Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."); Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ( "Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."); Stripling v. Jordan Production Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000) (same); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (same).

In addition, the Defendants contend that the Plaintiff was not even required to seek leave of the Court to amend the complaint in the state court, so that Justice Parga's decision was a *fait accompli* and should not be considered the law of the case. The Court disagrees. While Justice Parga noted that the Court's permission was not needed, he nevertheless proceeded to analyze the motion to the fullest extent. Thus, in the Court's discretion, the law of the case doctrine would remain applicable.

Next, Dr. Kendall points out that the specific motion she brings is not a motion to dismiss but rather a motion for judgment on the pleadings. Therefore, she asserts that she is providing the Court with documentation that Justice Parga did not consider, so that there is new evidence to deny the application of the law of the case doctrine.

Dr. Kendall's motion references several additional documents that she hopes will indicate that she should not be held liable as an "employer" within the meaning of N.Y. Exec. Law § 296, because she does not have the power to do anything more than merely carry out personnel decisions made by others. First, she includes the policies with respect to hiring and termination adopted by the Board, which states that "[n]o person shall be considered employed until a resolution to that effect has been adopted by the Board." (Ex. B.)  Second, she includes

13

examples of recommendations she filed with the Board, to demonstrate that she can do no more than make recommendations to the Board with respect to hiring and termination.  (Ex. C.)  Third, she includes examples of Board agendas at which hiring and termination decisions were scheduled to be addressed, in order to show that it is the Board that votes on personnel decisions and makes these determinations.  (Ex. D.)  Fourth, Dr. Kendall attaches the Board's Bylaws, which state that "[t]he Board shall act as a corporate body in overseeing the Districts affairs, personnel and properties."  (Ex. E.)  In addition, the Bylaws state that the Board has the sole authority and responsibility to establish policies for the operation of the Manhasset Public Schools.  (Id.)  Finally, she includes the Board's policies with respect to wages, which states that "it shall be the responsibility of the Assistant Superintendent for Business and his/her staff to prepare all payrolls."  These documents may be properly considered on a 12(c) motion, where a Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009).

However, the Court does not find that the new exhibits that were attached to Dr. Kendall's answer would affect the conclusion reached by the state court.  As Justice Parga explained in his decision, in determining whether an individual qualifies as an "employer" under the Human Rights Law, courts look to a number of factors, including (1) the selection and engagement of the individual; (2) the payment of salary or wages; (3) the power to dismiss the individual, and (4) the power to control the individual's work.  DiPilato v. 7–Eleven, Inc., 662 F. Supp. 2d 333, 348 (S.D.N.Y. 2009).  The documents produced by Dr. Kendall potentially establish that she did not have the final say with regard to either the selection of an employee or the power to dismiss an employee.  In addition, the Board's policy with respect to wages

14

arguably demonstrates that Dr. Kendall did not control the payment of salary or wages. However, these documents do not speak whatsoever as to Dr. Kendall's power to control Firestone's work.  In fact, "[t]he fourth factor is most important." MacSweeney v. ING Life Ins. and Annuity Co., No. 11 Civ. 971, 2011 WL 4839086, at *6 (S.D.N.Y. Oct. 11, 2011); see also Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 114 (E.D.N.Y. 2011) ("Further, it is difficult to accept the bare allegation that the principal of a middle school did not have significant control over "conditions of employment.").  Thus, prior to discovery and especially in the absence of any proof with regard to this essential fourth factor, the Court cannot say as a matter of law that Dr. Kendall is not an "employer" within the meaning of N.Y. Exec. Law § 296.  Accordingly, even considering this new "evidence" submitted by Dr. Kendall, Justice Parga's legal conclusion remains applicable as the law of the case.  (See Order at 9 ("It is unknown at this stage in the litigation and upon the submissions before this Court what role defendant Kendall had within the school . . . ").)

Finally, Dr. Kendall asserts that the law of the case doctrine is inapplicable because there is a need to correct a clear error and prevent manifest injustice.  Specifically, she argues that there was a legal error in that Justice Parga relied on Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995) a case which has been abrogated by Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The state court relied on Colon v. Coughlin when assessing Dr. Kendall's personal involvement, which is a necessary prerequisite for the Plaintiff to obtain damages pursuant to 42 U.S.C. § 1983.  In particular, the state court cited this case for the proposition that in order to state a claim for Section 1983 the personal involvement of a supervisor in alleged constitutional deprivations can be established in five ways, including that the defendant, after

15

being informed of the violation through report or appeal, failed to remedy the wrong.  Justice

Parga stated the following:

> Additionally, while it is well settled in the Second Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983, a supervisor's personal involvement may be established in one of five ways: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; *or* (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." (*Colon v. Coughlin*, 239 F.3d 246, 254 (2d Cir. 2001)).  As the proposed amended complaint alleges that Dr. Kendall failed to take timely corrective action when made aware of an allegation of sexual harassment, the plaintiff has stated a cause of action for violations of 42 U.S.C. against . . . Dr. Kendall.

(Pl. Ex. B. at 6.)

However, Dr. Kendall is correct that Justice Parga may have erred in stating that a

supervisor's personal involvement can generally still be established in one of five ways.  The

Supreme Court's decision in Ashcroft v. Iqbal abrogated many prongs of the Colon test.  Several

decisions in this district have concluded that by specifically rejecting the argument that "a

supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the

supervisor's violating the Constitution," Ashcroft v. Iqbal, 129 S. Ct. at 1949, Iqbal effectively

nullified several of the classifications of supervisory liability enunciated by the Second Circuit in

Colon v. Coughlin.  See, e.g., Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801, 2009 WL

1835939 at *4, 6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories

pass Iqbal's muster—a supervisor is only held liable if that supervisor participates directly in the

alleged constitutional violation or if that supervisor creates a policy or custom under which

unconstitutional practices occurred.  The other Colon categories impose the exact types of

supervisory liability that <u>Iqbal</u> eliminated—situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."); <u>accord, e.g.</u>, <u>Joseph v. Fischer</u>, No. 08 Civ. 2824, 2009 WL 3321011 at \*14 (S.D.N.Y. Oct. 8, 2009) ("[U]nder <u>Iqbal</u>, . . . . [a] defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right.").  "While Colon permitted supervisory liability in situations where the supervisor knew of and acquiesced in a constitutional violation committed by a subordinate, these post- <u>Iqbal</u> district court decisions reason that <u>Iqbal</u>'s 'active conduct' standard imposes liability only where that supervisor directly participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred."  <u>Sash v. U.S.</u>, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009).

Therefore, the Court agrees that Justice Parga considered acts barred by <u>Iqbal</u> with regard to Dr. Kendall's personal involvement, and accordingly will not consider the determination with regard to this issue to be the law of the case.  Accordingly, the Court will consider this portion of Dr. Kendall's motion for judgment on the pleadings.

In sum, the Court will not reconsider whether the Plaintiff has stated a valid Section 1983 cause of action against the District and the Board, including whether there can be municipal liability if there is a policy or custom adequately pled in order to satisfy the requirements of <u>Monell</u> liability.  Nor will the Court reconsider certain findings with regard to whether the Plaintiff has stated a valid Section 1983 cause of action against Dr. Kendall, namely whether she is entitled to qualified immunity.  Also, the Court will not reconsider whether the Plaintiff has stated a valid N.Y. Exec. Law § 296 claim against Dr. Kendall, including whether she qualifies as an "employer" under the statute and whether this particular claim is time barred.  The only issues that the Court will address in the context of the present motions that were *not* already

17

determined by Justice Parga are: (1) whether Dr. Kendall can be held individually liable under Section 1983 due to the nature and degree of her personal involvement; (2) whether the Plaintiff has stated a cause of action under N.Y. Exec. Law § 296 for aiding and abetting the constitutional violations; and (3) whether the Plaintiff can pursue a claim against Dr. Kendall for punitive damages.

Pursuant to this same rationale, the Court hereby denies the Plaintiff's cross-motion to compel the Court to reinstate the Title IX claim.  Under the law of the case doctrine, the Plaintiff's ability to validly state a cause of action pursuant to this statute has already been assessed and dismissed by Justice Parga.

**D. As to the Remaining Portions of Dr. Kendall's Motion for Judgment on the Pleadings**

**1. Personal Involvement**

The Plaintiff asserts Section 1983 claims for violations of her rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Constit. amend. XIV, § 1.  "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that [s]he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  A § 1983 equal protection claim may be predicated upon sex discrimination in public employment or, in some circumstances, on sexual harassment in the workplace.  The Equal Protection Clause, through § 1983, "protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender. Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination

claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals."  Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir.2006).

Dr. Kendall asserts that there can be no Section 1983 claim brought against her in her individual capacity because the Plaintiff has failed to plead that she had any personal involvement in the alleged constitutional deprivations.  According to Dr. Kendall, she was merely one notified of one flirtatious email and immediately took action, holding two meetings with Firestone on the same day she was informed of the communication.  Thus, she asserts that even assuming there was unconstitutional conduct, she had no personal involvement in it so that the Section 1983 claim against her should be dismissed.

On the other hand, the Plaintiff contends that the Amended Complaint plainly alleges that Dr. Kendall's decisions and actions (or lack thereof) caused the violation of Firestone's constitutional rights.  (See Am. Compl., ¶¶ 39, 40, 42, 45, 48.)  She asserts that under the Colon prongs, unfortunately embracing this now abrogated standard, her allegations against Dr. Kendall easily satisfy prongs (2), (4) and (5).  However, as set forth above, only the first and part of third Colon categories appears to pass Iqbal's muster, especially in the case of intent-based constitutional claims, which is what the Court faces here.  Indeed, the cases that the Plaintiff cites in support of her arguments as to Dr. Kendall's personal involvement all pre-date Iqbal.

Therefore, the Court looks to the factual allegations contained in the Amended Complaint to ascertain whether the Plaintiff has stated a claim for supervisory liability under Section 1983 post-Iqbal.  The baseline inquiry is what precisely the constitutional violation is that the Plaintiff is alleging.  Certainly, the sexual harassment by Berrios is alleged to constitute disparate treatment based on gender in violation of the Equal Protection Clause.  (Am. Compl., ¶ 46.)  With regard to Dr. Kendall, the Plaintiff alleges that she had actual knowledge or should have

19

known of the repeated sexual harassment of the Plaintiff by Berrios; that she failed to take timely corrective or remedial action, thereby acquiescing in the severe and pervasive sexual harassment; and that because Dr. Kendall knew of the harassment that the Plaintiff was subjected to and knew of prior improper sexual conduct by Berrios to other female staff members, this constitutes deliberate indifference to the Plaintiff's constitutional rights.

The Plaintiff references the sexual harassment policy that her supervisor, Dr. Kendall, allegedly ignored and maintains that this would have prevented constitutional violations.  In addition, she offers details regarding how and why Dr. Kendall should have or did know about the alleged violations.  However, despite the Plaintiff's attempts to tie Dr. Kendall's actions or inactions into the sexual harassment, at its core the Plaintiff's claim for supervisory liability is one for failure to remedy a wrong after it has been reported.  This is undoubtedly insufficient in the aftermath of Iqbal.  See Morpurgo v. Incorporated Village of Sag Harbor, No. 07 Civ. 1149, 2010 WL 889778, at *14 (E.D.N.Y. Mar. 5, 2010) ("Assuming Plaintiff's allegations against Defendants . . . to be true, Plaintiff has, at most, alleged that these Defendants knew of and possibly acquiesced in the constitutional violations committed by their subordinates . . . . However, Plaintiff has not stated that any of these Defendants participated directly in the alleged illegal conduct . . . Based upon the lack of particularized allegations against these four individuals, and in light of the Supreme Court's holding in Iqbal eliminating supervisory liability in situations where supervisors knew of and acquiesced in a constitutional violation committed by a subordinate, Plaintiff's 1983 claims against [supervisory Defendants] cannot survive the motion to dismiss.").

Thus, the Plaintiff has not sufficiently alleged direct personal involvement.  The Supreme Court has plainly rejected the essence of the Plaintiff's allegations against this particular

defendant, which is that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. If the Plaintiff can allege that Dr. Kendall was directly involved in the constitutional violation or was responsible for the policy or custom under which unconstitutional practices occur, then a claim for damages under Section 1983 may lie. See Livermore v. City of New York, No. 08 CV 4442, 2011 WL 182052, at *8 (S.D.N.Y. Jan. 13, 2011) ("Although the Supreme Court's decision in Iqbal eliminated certain categories of supervisory liability that were recognized in Colon, a plaintiff may still state a claim based on a supervisor creating or condoning a policy or custom under which unconstitutional practices occur."). However, even when viewing the Amended Complaint in the best light for the Plaintiff, the Court cannot discern these contentions from the relevant pleading. Therefore, the Section 1983 claim against the Defendant Dr. Kendall is dismissed without prejudice.

### 2. Aiding & Abetting

Because Justice Parga did not address the sufficiency of the Plaintiff's cause of action for aiding and abetting a deprivation of rights under N.Y. Exec. Law § 296(6) as against Dr. Kendall, the Court will also address Dr. Kendall's motion on this ground. Dr. Kendall asserts that to be responsible under this provision, there must be an allegation that the defendant employee actually participated in the conduct giving rise to the discrimination allegation. However, according to Dr. Kendall, she did not participate in any alleged harassment of the Plaintiff and the complaint does not allege that Dr. Kendall personally participated in any such harassment.

This contention by Dr. Kendall can be easily addressed. The complaint does not state an aiding and abetting cause of action against Dr. Kendall pursuant to N.Y. Exec. Law § 296(6).

21

Rather, it appears plain to the Court that the complaint only states an aiding and abetting cause of action against the Defendant Victor Berrios.  Therefore, the Court declines to consider this argument with regard to Dr. Kendall.

### 3. Punitive Damages

Dr. Kendall also takes issue with the Plaintiff's request for punitive damages.  She alleges that claims for punitive damages are properly dismissed where a complaint alleges only a private wrong and the alleged conduct does not rise to a high level of moral culpability.  Here, she asserts that the conduct that is alleged in the Amended Complaint fails to meet the threshold for punitive damages because her actions were not wanton or outrageously immoral.

The Court agrees with Dr. Kendall that the claim for punitive damages as against her should be dismissed.  At its core, the Plaintiff's claim for punitive damages is that Dr. Kendall could have done more to prevent an alleged assault by a third party.  However, the facts alleged here do not establish the requisite showing of moral culpability, turpitude, or criminal vindictiveness to support a punitive damages award.  See Boykin v. Mora, 274 A.D.2d 441, 442, 711 N.Y.S.2d 904 (2d Dep't 2000) ("Punitive damages are available . . . only where the actions of the alleged tortfeasor constitute either gross recklessness or intentional, wanton, or malicious conduct . . . or were activated by evil or reprehensible motives.").

The cases cited by the Plaintiff to support her claim for punitive damages are distinguishable.  For example, in Brabson v. The Friendship House of Western New York, 46 Fed. App'x 14 (2d Cir. 2002), the Second Circuit upheld a jury verdict that awarded punitive damages.  However, this award was found to be reasonable under a very distinct set of facts. There, the employee was subjected to sexually offensive statements, gestures and physical overtures by another employee who boasted to her about his prior violent criminal history that

included incidents of rape, sodomy and assault.  Friendship House did not act despite repeated

complaints, ratified and accepted the co-worker's conduct, and ultimately retaliated against the

employee by terminating her employment after she made reports to the Equal Employment

Opportunity Commission.  In fact, the Second Circuit noted that Friendship House attempted to

have an employee concoct a false accusation of sexual harassment against this employee.  This

conduct falls into a separate category of outrageous and shocking circumstances, unlike the

facts alleged in the instant case.

Therefore, the Plaintiff's claim for punitive damages against Dr. Kendall is dismissed.

**E.  As to the Municipal Defendants' Motion to Dismiss Dr. Kendall's Cross-Claims**

As a final matter, the Defendant Dr. Kendall has filed a cross-claim against all the other

Defendants, including the District and the Board, for indemnification and contribution.  The

municipal Defendants have filed a motion to dismiss these cross-claims.  Specifically, they

contend first, that Dr. Kendall may not seek indemnification or contribution under Section 1983

because there is no federal right to either indemnification or contribution, and second, that there

can be no indemnification or contribution for the state law claim because the Plaintiff has failed

to adequately plead this claim as against Dr. Kendall.  Although the Court has found that the

Section 1983 claim has not been sufficiently pled as against Dr. Kendall, the Court will

nevertheless proceed to analyze Dr. Kendall's cross-claims under this statute as well as under the

state law.

"The purpose of all contribution and indemnity rules is the equitable distribution of the

loss occasioned by multiple defendants."  Mas v. Two Bridges Assocs., 75 N.Y.2d 680, 690, 555

N.Y.S.2d 669, 554 N.E.2d 1257 (1990).  There are "important substantive distinctions between

contribution and indemnity.  Basically, in contribution the loss is distributed among tort-feasors,

by requiring joint tort-feasors to pay a proportionate share of the loss . . . , while in indemnity the party held legally liable shifts the entire loss to another."  Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 23–24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985); see Raquet v. Braun, 90 N.Y.2d 177, 182–183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997); Mas, 75 N.Y.2d at 689–690, 555 N.Y.S.2d 669, 554 N.E.2d 1257; McDermott v. City of New York, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980).

With regard to the federal Section 1983 cause of action against Dr. Kendall, the Court agrees with the municipal Defendants that "there is no federal right to indemnification under § 1983."  Taifer v. Catherines Stores Corp., No. 06 Civ. 2976, 2008 WL 7728651, at *3 (S.D.N.Y. May 28, 2008) (quoting Hayden v. Hevesi, No. 05 Civ. 0294, 2007 WL 496369, at *4 (W.D.N.Y. Feb. 12, 2007)); see also Anderson v. Local Union No. 3, Int'l Bhd. of Elec. Workers, 751 F.2d 546, 548-49 (2d Cir. 1984) (finding no right of indemnification in cases brought under 42 U.S.C. § 1981 and Title VII).  In addition "[n]o right to contribution exists under § 1983."  Castro v. Cnty. of Nassau, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010); see Crews v. Cnty. of Nassau, 612 F. Supp. 2d 199, 208 (E.D.N.Y. 2009) (collecting cases).  Therefore, Dr. Kendall's cross-claim against the School District and the Board for contribution and indemnification under Section 1983 is dismissed.

Nevertheless, there is a pending state law claim against Dr. Kendall which was adequately alleged in the amended complaint, according to Justice Parga's analysis that is the law of the case.  This state law claim is under the New York State Human Rights Law, or N.Y. Exec. Law § 296.  Dr. Kendall asserts that she is entitled to contribution/indemnification from the municipal Defendants because any harm that may have inured to the Plaintiff was necessarily a result of District policies and instructions that Dr. Kendall was merely tasked with executing.

24

On the other hand, the municipal Defendants maintain that Plaintiff does not claim that she was harmed by any District policies; rather, she alleges that she was harmed by Dr. Kendall's failure to follow the District policies.

"An action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the 'same injury' to plaintiff." LNC Invs., Inc. v. First Fidelity Bank, Nat. Assoc., 935 F. Supp. 1333, 1346 (S.D.N.Y. 1996) (internal quotations omitted).  Section 1401 of the New York Civil Practice Law and Rules ("CPLR") ("Section 1401") states, in pertinent part, that ". . . two or more persons who are subject to liability for damages for the same personal injury . . . may claim contribution among them whether or not an action has been brought . . . against the person for whom contribution is sought."  Under New York law, contribution is not confined to cases premised upon negligence, but may be utilized in cases that proceed under theories of strict liability, breach of warranty, and even intentional torts.  See Doundoulakis v. Town of Hempstead, 42 N.Y.2d 440, 451, 398 N.Y.S.2d 401, 406, 368 N.E.2d 24, 29 (1977); Taft v. Shaffer Trucking, Inc., 52 A.D.2d 255, 259, 383 N.Y.S.2d 744, 747 (4th Dep't 1976); Hughes v. Ataka America, Inc., 48 A.D.2d 808, 369 N.Y.S.2d 723 (1st Dep't 1975).

As a general matter, contribution may be available under New York State law with regard to claims brought under N.Y. Exec. Law § 296.  See, e.g., Rodolico v. Unisys Corp., 189 F.R.D. 245, 250–52 (E.D.N.Y. 1999) (Spatt, J.); see also Crumpt v. ITT Std., No. 02 Civ. 957, 2004 U.S. Dist. LEXIS 30555, at *10 (W.D.N.Y. Aug. 31, 2004) ("The reasoning in Rodolico is sound.  This reasoning applies equally to a claim for contribution based upon damages awarded pursuant to a violation of 296 in New York.").  Consequently, the question faced by this Court is whether it may be brought by Dr. Kendall under the facts of the present case.

25

First, the fact that there can be no claim of liability against the municipal Defendants under the Human Rights Law due to the timeliness of that particular claim is not imperative. Certainly, "contribution under New York C.P.L.R. § 1401 is only appropriate where two parties are both found liable for the same injury." Goodman, 850 F. Supp. 2d at 391; See Mohawk Intern., Inc. v. Zangrilli, 161 A.D.2d 1169, 555 N.Y.S.2d 962 (4th Dep't 1990) ("Further, our conclusion that Brandeles is not liable to plaintiff necessarily defeats the cross-claims for contribution asserted against Brandeles by the other defendants . . . and, accordingly, those cross-claims must be dismissed."). However, "there may be situations in which one party may not be liable to the injured person but should nonetheless be responsible for contribution. For instance, where, at the time he is sued for contribution, the alleged wrongdoer is not subject to suit directly by the injured party because the statute of limitations has run on that claim, it may nonetheless be proper to subject him to a claim for contribution under this Article if all other requirements of this Article are met." Zillman v Meadowbrook Hospital Co., Inc., 73 Misc.2d 726, 342 N.Y.S.2d 302 (Sup. Ct. Nassau Co. 1973) (overturned on alternate grounds).

Nevertheless, Dr. Kendall has failed to properly allege a claim for contribution as against the School District and the Board. The right to contribution generally arises when "multiple wrongdoers . . . each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries." Trustees of Columbia Univ., 109 A.D.2d at 454, 492 N.Y.S.2d 371. Thus, "[t]he critical requirement' for apportionment by contribution under CPLR article 14 is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.'" Raquet, 90 N.Y.2d at 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (quoting Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp., 71 N.Y.2d 599, 603, 528 N.Y.S.2d 516, 523 N.E.2d 803 (1988)).

Put another way, there must be some jural relationship between the allegedly tortious actions of the party so that it is possible that one may be held legally responsible in whole or in part for damages caused or contributed to by the conduct of the other.  It is sufficient if each defendant's breach of his or her respective duty was in part responsible for the eventual harm to the plaintiff.  In order to prevail on a claim for contribution, Dr. Kendall must identify a separate duty owed by the District or Board to either the Plaintiff or Dr. Kendall.  However, in Dr. Kendall's cross-claim, she does not allege the duty that the District or Board owed to either herself or to the Plaintiff.  Moreover, while Dr. Kendall asserts in her opposition that she is entitled to contribution from the municipal Defendants because any harm that may have inured to the Plaintiff was necessarily a result of District policies and instructions that Dr. Kendall was merely tasked with executing, she does not specifically allege in her cross-claim that the municipal Defendants' breach of any duty had a part in causing or augmenting the injury for which contribution is sought.  Therefore, the municipal Defendants' motion to dismiss Dr. Kendall's claim for contribution with regard to the Plaintiff's state law claim is granted, so that the claim is dismissed without prejudice.

With regard to indemnification, it is clear that there is no contractual indemnification being asserted present in this case.  Rather, Dr. Kendall appears to be bringing a common law right to indemnification under the N.Y. Exec. Law § 296.  This Court must ascertain (1) whether indemnification is available under this state statute; and (2) if it is, whether it is appropriate in the instant case.

"New York case law supports a proposition that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff."  Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1284

27

(2d Cir. 1996); see also Perri v. Gilbert Johnson Enters., Ltd., 14 A.D.3d 681, 684–85, 790

N.Y.S.2d 25 (N.Y. App. Div. 2005) ("To establish a claim for common-law indemnification, 'the

one seeking indemnity must prove not only that it was not guilty of any negligence beyond the

statutory liability but must also prove that the proposed indemnitor was guilty of some

negligence that contributed to the causation of the accident.' " (quoting Correia v. Professional

Data Mgt., 259 A.D.2d 60, 65, 693 N.Y.S.2d 596 (N.Y. App. Div. 1999))); Trustees of Columbia

Univ., 109 A.D.2d at 453, 492 N.Y.S.2d 371 ("Since the predicate of common law indemnity is

vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a

party who has itself actually participated to some degree in the wrongdoing cannot receive the

benefit of the doctrine." (citing Rock v. Reed–Prentice, 39 N.Y.2d 34, 382 N.Y.S.2d 720, 346

N.E.2d 520 (N.Y. 1976)).

       Thus, in order for Dr. Kendall to be entitled to indemnification, it would have to be

alleged that she committed no wrong, but only by virtue of her relationship with the tortfeasor,

she is nevertheless potentially liable to Firestone.  However, at least under the rubric of the

Human Rights law, the Plaintiff here has alleged that Dr. Kendall participated in the acts giving

rise to the Plaintiff's injuries.  For example, the Plaintiff alleges that "[b]ecause of the refusal of

the School Principal, Dr. Jean Kendall to take timely corrective or remedial action, Defendant

Dr. Jean Kendall acquiesced in the severe and pervasive sexual harassment of the Plaintiff . . .

[s]uch conduct interfered with the employment of the Plaintiff and created an offensive,

intimidating and hostile work environment for Plaintiff, made daily work difficult for her, all in

violation of Executive Law § 296 . . ."  (Am. Compl. at ¶¶ 99–100.)  "[A] party who has itself

actually participated to some degree in the wrongdoing cannot receive the benefit of the

[indemnification] doctrine."  Trustees of Columbia Univ., 109 A.D.2d at 453, 492 N.Y.S.2d 371.

Any liability of Dr. Kendall in this case would be based on her own wrongdoing, and alternatively, if she did not violate the state human rights laws, she would be free from liability, regardless of the District and Board's liability.  Dr. Kendall is therefore not entitled to indemnification under N.Y. Exec. Law § 296, assuming indemnification under this statute is even available.  See Miloscia v. B.R. Guest Holdings LLC, 33 Misc.3d 466, 928 N.Y.S.2d 905 (Sup. Ct. 2011); see also Goodman v. Port Auth. of New York and New Jersey, 850 F. Supp. 2d 363, 390 (S.D.N.Y. 2012) ("Since common-law indemnity is barred where the party seeking indemnification is at fault, the Port Defendants' cross-claim for contractual indemnification under 'any tort theory' is dismissed."); Olvera-Morales v. Sterling Onions, Inc., 322 F. Supp. 2d 211, 223 (N.D.N.Y. 2004) (assuming without deciding that New York law recognizes a claim for indemnification for liability under the Human Rights Law, and denying summary judgment because there were allegations in the complaint and evidence in the record to the effect that the party seeking indemnification participated in the alleged wrongful conduct).

Accordingly, the Court agrees that there is a legal bar to Dr. Kendall's claims for indemnification or contribution with respect to the state law claim pending against her. Therefore, the municipal Defendants' motion to dismiss Dr. Kendall's cross-claims with regard to the state law cause of action is granted.

## III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the motion to dismiss the Amended Complaint filed by the Board and the District is denied in its entirety; and it is further

**ORDERED**, that Dr. Kendall's motion for judgment on the pleadings is granted with regard to the Section 1983 claim, which is hereby dismissed without prejudice; and it is further

**ORDERED**, that Dr. Kendall's motion for judgment on the pleadings is granted with regard to the Plaintiff's claim for punitive damages, which is hereby dismissed with prejudice; and it is further

**ORDERED**, that Dr. Kendall's motion for judgment on the pleadings is denied in all other respects; and it is further

**ORDERED**, that the motion to dismiss Dr. Kendall's cross-claim filed by the Board and the District under Section 1983 is granted, but under N.Y. Exec. Law § 296 is denied; and it is further

**ORDERED**, that caption is amended to reflect that Scott Craig Firestone is no longer a party, as set forth below.

---------------------------------------------------------X

LISA MORALES FIRESTONE,

               Plaintiff,

      -against-

VICTOR BERRIOS, DR. JEAN KENDALL,
BOARD OF EDUCATION OF THE
MANHASSET UNION FREE SCHOOL
DISTRICT, and THE MANHASSET UNION
FREE SCHOOL DISTRICT,

               Defendants.
---------------------------------------------------------X

**SO ORDERED.**
Dated: Central Islip, New York
January 22, 2013

                                  _/s/ Arthur D. Spatt_
                                 ARTHUR D. SPATT
                                 United States District Judge